IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| HAROLD WILLIAMS, *o.b.o. R.W.*, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 4:16-CV-674-LSC |
| NANCY BERRYHILL, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.    Introduction**

The plaintiff, R.W., a minor, by and through her father, Harold Williams, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for child's Supplemental Security Income ("SSI"). The plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirteen years old and had completed the seventh grade at the time of the Administrative Law Judge's ("ALJ's") hearing. (Tr. at 18, 36.) Plaintiff alleged disability based on a learning disability. (Tr. at 174.)

1

The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. *See* 20 C.F.R. § 416.924; *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278-79 (11th Cir. 2004) (describing the process for determining disability for children). The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 416.924(a), (b). At step two, the ALJ determines whether the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.924(a), (c). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment in the Listings or functionally equals the Listings. *See* 20 C.F.R. §§ 416.902, 416.911(b) 416.924(a-d); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. A child's functional limitations are evaluated under six broad functional areas called domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical wellbeing. *See* 20 C.F.R. § 416.926a(b)(1). To establish functional equivalency, a claimant must demonstrate her impairments resulted in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(a), (d). Functional equivalence is not with

respect to a particular listing, but to the Listings overall. *See* 20 C.F.R. 416.924(d)(1). If functional equivalency is not established, an ALJ will find the claimant not disabled under the Act. *See id.*

Applying the sequential evaluation process, the ALJ found that the plaintiff has not engaged in SGA since the date the application was filed. (Tr. at 16.) He found that she had the following severe impairments: learning disorder and depression, and the following non-severe impairment: obesity. (Tr. at 16-17.) However, he concluded that these impairments neither meet, medically equal, nor functionally equal the severity of the Listings, evaluating Plaintiff's abilities under each of the six domains as described above. (Tr. at 17.) The ALJ concluded his findings by stating that Plaintiff has not been disabled as defined in the Social Security Act since November 30, 2012, the date the SSI application was filed. (Tr. at 25).

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). That said, although the court may not decide the facts anew, reweigh the evidence, or substitute its own judgement for that of the commissioner, the commissioners conclusions of law are

subject to denovo review. *See Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

The plaintiff alleges that the ALJ's decision should be reversed and remanded for three reasons. First, she believes that the ALJ erred in finding her father's testimony not entirely credible. Second, Plaintiff alleges that the ALJ erred in finding she did not meet, equal, or functionally equal the Listings. Third, she argues that the ALJ should have further developed the record by re-contacting Quality of Life Health Services, Inc., for additional information about her impairments.

### A. Credibility Determination of Father's Testimony

In this case, the child did not testify. Her father testified as follows: his daughter suffers from depression; she has low Global Assessment of Functioning

("GAF") scores; she has completed seventh grade and has been promoted to eighth grade; she repeated kindergarten; at the beginning of the school year, she was making D's and F's; he has to stand over her to make sure she does her homework; she has chores she has to do at home, but she doesn't do them; she has friends that come over and spend the night, but she will isolate herself from the friend; she has had disciplinary reports from school; she doesn't follow directions in the hallway, she is tardy, and she got into fights; she is in special education classes; she is unable to read and is unable to count money; she can take care of personal hygiene needs, but she has to be reminded to brush her hair and brush her teeth; her mother lost custody of her; the mother tested positive for drugs and moved to North Carolina; the mother is a bad influence on her; and she does have some problems with her mother not being in her life. (Tr. at 35-46.)

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); Social Security Ruling ("SSR") 96-7p;[1] *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir.

---

[1] Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from

2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, substantial evidence supports the ALJ's determination that Mr. Williams' testimony was not entirely credible. Specifically, the ALJ found his testimony regarding Plaintiff's intellectual functioning was "undermined not only by the teacher questionnaires but also by [Plaintiff's] other education records." (Tr. at 19). Plaintiff's school records confirm that she was tested and assessed in

---

[the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

2012 as having a specific learning disability, primarily in mathematics, and thereby eligible for an individualized education program. (Tr. at 124-151.) Those records also document that she is of average intelligence. (*Id.*) On January 4, 2013, Plaintiff's sixth grade teacher completed a Teacher Questionnaire at the request of the State Agency Disability Determination Service. (Tr. at 181-210.) The teacher reported that, in terms of the six functional domains at issue in this case, Plaintiff had overall less than "marked" limitations in the domains of acquiring and using information and attending and completing tasks, and no limits on the remaining domains. (*Id.*) She specifically reported that Plaintiff was typically on task and hardworking. (*Id.*) On May 8, 2014, Plaintiff's seventh grade teacher completed a Teacher Questionnaire, reporting that Plaintiff had less than "marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and overall no limits in the remaining functional domains. (Tr. at 228-35.) The ALJ acknowledged that these teachers do not qualify as acceptable medical sources[2] but nonetheless gave Plaintiff's sixth grade teacher's opinion some weight and her seventh grade teacher's opinion great weight considering that they were able to observe Plaintiff in academic and social settings on a daily basis. (Tr. at 19.)

---

[2]    Plaintiff does not challenge the ALJ's reliance upon these teachers' opinions.

8

With regard to Mr. Williams' testimony that Plaintiff suffers from depression, the ALJ found that Plaintiff's depression was a severe impairment but noted that Mr. Williams testified that Plaintiff did not take medication for depression. (Tr. at 19). The ALJ found that Plaintiff's depression was situational from her mother not being around. (*Id.*) Records from Quality of Life Health Services, Inc., and Dr. Samuel Fleming, III, a clinical neuropsychologist who examined Plaintiff, support the ALJ's finding that Plaintiff's depression has not had a limiting effect on her ability to function.

Records from Plaintiff's visits to Quality of Life reflect merely symptomatic treatment and routine follow ups. At Plaintiff's initial evaluation in August 2013, she was diagnosed with depression and anger management issues. (Tr. at 294).[3] It was noted that her depression and anger management issues appeared to stem from how other children teased her about her appearance, by saying "mean things to her" and "calling her names," causing her to leave school due to "negative comments." (*Id.*) Plaintiff reported these occurrences sometimes caused her to defend herself and/or get angry, which could cause her to throw things. (Tr. at 295). She reported no history of behavioral health issues. (*Id.*) Plaintiff reported

---

[3] All of Plaintiff's mental health appointments at Quality of Life were recorded by Ms. Hall, a social worker. (Tr. at 306.) As Ms. Hall is a social worker, she is also not an "acceptable medical source" as defined by the regulations. In any event, Plaintiff does not challenge the ALJ's reliance upon Ms. Hall's treatment notes.

9

that she was in eighth grade at school and wanted to be a pediatrician when she grew up. (*Id.*) At this visit, and at all subsequent visits, Plaintiff was noted to have had an appropriate affect and euthymic mood, and she was diagnosed with average intelligence, fair reasoning, fair judgment, and fair insight. (Tr. at 293, 295, 299, 302, 304, 314, 316, 319). In September 2013, Plaintiff got into a fight with a male student that made fun of her. (Tr. at 292). However, in November 2013, Mr. Williams reported to Quality of Life that Plaintiff had not been in fights at school. (Tr. at 301). By December 2013, Plaintiff reported that she felt "extremely happy" that she was able to talk to her mother over the phone and internet. (Tr. at 298). Plaintiff also reported that she had not been getting in trouble at school. (*Id.*) In January 2014, Plaintiff stated that she was "doing well in school" and had raised her grades. (Tr. at 318). Plaintiff was upset because her father would not allow her to spend her summer vacation in another state with her mother and brother. (*Id.*) At her February 2014 appointment, Plaintiff reported that she was enjoying her Tae Kwon Do classes. (Tr. at 315). In April 2014, she reported doing well, though she was "slightly upset" with her father for not allowing her to have an extended visit with her mother over the summer. (Tr. at 313). In May 2014, Plaintiff reported that she was suspended for fighting a male student in school who would not stop making fun of her. (Tr. at 320).

In October 2014, Dr. Fleming evaluated Plaintiff. (Tr. at 326-28). While he noted symptoms of depression, Dr. Fleming did not diagnose Plaintiff with depression, even noting "[t]here were no indications of depression." (Tr. at 327-28). The foregoing treatment notes and records include no evidence of medication for depression or evidence that Plaintiff's depression caused marked or extreme limitations.

With regard to Plaintiff's father's testimony that she "repeated kindergarten," "was making D's and F's" in school, had issues doing her homework, "is in special education classes," and "is unable to read and count money," the ALJ properly noted Plaintiff progressed to the eighth grade and had not repeated any grades since kindergarten. (Tr. at 19, 36). The ALJ also cited that Plaintiff's school records indicated that she was in general education classes without any special education services. (Tr. at 19, 236). In sixth grade, her strength was reading. (Tr. at 239). After Plaintiff needed to receive reading assistance during 2013-2014, she "scored 100% on all unit assessments in the program," with strengths in vocabulary and phonics, genres, recognizing main ideas and supporting details, comparing and contrasting, sequencing, and cause and effect. (Tr. at 141). In addition, Dr. Fleming opined, in October 2014, that Plaintiff was "intellectually capable of meeting the academic demands of the public school classroom." (Tr. at

328). Dr. Fleming noted that Plaintiff's IQ was in the low-average range of intellectual abilities, but that she "did not seem to be putting forth her best effort on the verbal subtest," lowering her overall IQ score. (Tr. at 328). Dr. Fleming noted evidence of a learning disability in math (tr. at 328), and the record suggests Plaintiff had basic math skills, such as basic addition, subtraction, multiplication, and division. (Tr. at 141).

Substantial evidence in the record also contradicts Plaintiff's father's testimony that Plaintiff has severe difficulty interacting with others. He testified that she isolated herself from friends who came to sleep over at her house, got into fights, and had disciplinary reports from school. However, the ALJ noted Plaintiff had friends that she did things with and was on Facebook. (Tr. at 18). Also, the ALJ noted she fought only "when pressured by a bully." (Tr. at 23). Moreover, Plaintiff's teachers did not note any serious problems with her ability to interact with others. (Tr. at 23, 185, 231). In October 2014, Dr. Fleming opined that Plaintiff seemed satisfied with her level of social functioning. (Tr. at 328). Nor is Plaintiff's father's testimony that she has problems taking care of herself supported by any other evidence in the record.

Finally, Plaintiff's father's discussion of Plaintiff's GAF scores during his testimony is of little import. A GAF score merely reflects an examiner's opinion

regarding a patient's symptoms or possible difficulty in social, occupational, or school functioning at the time of the examination. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSMIV) 32-34 (4th ed. 2000, Text Rev.) (describing the GAF scale used in Axis V of a diagnostic multi-axial evaluation). As a GAF score has no bearing on a patient's functioning, the Commissioner "has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50,746, 50,764- 65 (Aug. 21, 2000)); *see also* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013) (abandoning GAF scores in its most recent edition of the DSM "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice").

Overall, the ALJ appropriately considered Plaintiff's father's testimony for consistency with the record, and substantial evidence in the record supports the ALJ's credibility determination.

### B. Meeting, Equaling, or Functionally Equaling a Listing

As noted, a child claimant can satisfy the third step of the sequential evaluation by showing her impairments met or medically equaled the severity of one of the Listings in 20 C.F.R. pt. 404, subpt. P, App. 1. *See* 20 C.F.R. §

416.924(d). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224; *see* 20 C.F.R. § 416.925. Additionally, a claimant's impairments must meet or equal all of the specified medical criteria in a particular listing for the claimant to be disabled at this step. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531.

Alternatively, a child claimant can satisfy the third step of the sequential evaluation by showing her impairments functionally equaled the Listings. *See* 20 C.F.R. § 416.924(d). A child's functional limitations are evaluated under six broad functional areas called domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical wellbeing. *See* 20 C.F.R. § 416.926a(b)(1). To establish functional equivalency, a claimant must demonstrate her impairments resulted in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20

C.F.R. § 416.926a(a), (d). Functional equivalence is not with respect to a particular listing, but to the Listings overall. *See* 20 C.F.R. 416.9249d)(1).

Here, after finding that Plaintiff's impairments did not meet or medically equal a Listing, the ALJ considered whether Plaintiff's impairments functionally equaled the severity of the Listings by evaluating her condition under the six broad functional equivalence domains. (Tr. at 17-25). The ALJ found Plaintiff had no limitations in: (1) moving about and manipulating objects; (2) caring for yourself; and (3) health and physical well-being. (Tr. at 23-25). The ALJ also found Plaintiff had less than "marked" limitations in: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. (Tr. at 20-23). As Plaintiff did not have marked limitations in two domains or an extreme limitation in one domain, the ALJ found she did not have an impairment or combination of impairments that functionally equaled the severity of the Listings.

Plaintiff contends her impairments met or equaled Listing 112.04, which pertains to affective disorders, including depression. However, other than recite the criteria for the listing and state generally that the ALJ "mischaracterized the treatment records from Quality of Life" and "found [her] father was not credible," Plaintiff makes no argument as to how her impairments met or equaled Listing 112.04. Although Plaintiff was diagnosed with an affective disorder (depression), a

diagnosis alone is insufficient to satisfy the criteria of a listing impairment. *See* 20 C.F.R. § 416.925(d); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Substantial evidence also supports the ALJ's determination that Plaintiff's impairments did not functionally equal the Listings. Plaintiff makes no argument about which of her six domains of functioning should have been classified as having a "marked" or "extreme" limitation. To the contrary, the ALJ observed that "no treating, examining or reviewing doctor has indicated that the claimant was disabled or otherwise unable to perform in a generally age-appropriate manner across the functional domains at issue in this case. She has no significant physical impairments or physical impairment causing limitation of function." (Tr. at 19). Additionally, as discussed above, treatment notes from Quality of Life and an evaluation from Dr. Fleming provide substantial evidence in support of the ALJ's finding. (Tr. at 17- 25, 292-322, 326-28). Also as discussed above, the ALJ observed that Plaintiff's teachers "reported no serious, i.e., 'marked,' limits or problems in the functional domains at issue." (Tr. at 19, 182-89, 228-35). As Plaintiff fails to articulate how she has limitations in any of the six domains of functioning, let alone how those limitations are "marked" or "extreme," she has failed to carry her burden of demonstrating that her impairments are functionally equivalent to the Listings.

## C. Developing the Record

The plaintiff argues that the ALJ should have contacted the Quality of Life office for additional information "if the ALJ was not satisfied with the records."

To be sure, the ALJ has a duty to develop a fair record. *Henry v. Comm'r of Soc. Sec.*, 802 F. 3d 1264, 1268 (11th Cir. 2015). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 42 U.S.C. § 423(d)(5). Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982). "Although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

The almost 200-page record contains treatment notes and psychological evaluations from several providers, teacher questionnaires, and educational archives. (Tr. at 124-63, 181-210, 221-22, 228-329). Plaintiff has failed to demonstrate evidentiary gaps or physical or mental symptoms needing further

evaluation. Though Plaintiff alleges additional medical evidence would support her claim, she does not cite what alleged information would be uncovered if the ALJ had re-contacted the Quality of Life office. Instead, the ALJ did not need any additional evidence to render the decision, and Plaintiff has failed to establish she was prejudiced to such a degree as to warrant remand. As the record contained sufficient evidence for the ALJ to decide Plaintiff's case, the ALJ fully and fairly developed the record.

**IV.  Conclusion**

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 13, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704